[Civ. No. 1262. Fifth Dist. Mar. 11, 1970.]

VERNON R. SMITH, Petitioner, v.
THE SUPERIOR COURT OF MADERA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Gendron & Gendron and Lester J. Gendron for Petitioner.

No appearance for respondent.

Thomas C. Lynch, Attorney General, Edsel W. Haws, Nelson P. Kempsky and Edward W. Bergtholdt, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**STONE, P. J.**—Petitioner, Vernon R. Smith, seeks a writ of prohibition to bar criminal proceedings against him in the Superior Court of Madera County. An information was filed on February 10, 1969, charging Smith with 11 counts of violation of Penal Code section 72 (presenting false claims to a state agency), each a felony, and 11 counts of violation of Penal Code section 532 (obtaining property by false pretenses), each a misdemeanor.

Petitioner was tried to the court without a jury and found guilty of count 1, whereupon the district attorney moved to dismiss counts 2 through 22 in the interests of justice, and the motion was granted. On July 2, 1969, petitioner moved for a new trial, which was granted. On November 4, 1969, the People moved for reinstatement of counts 2 through 11, the dismissed felony counts, and on November 14, 1969, over petitioner's objection, said counts were reinstated. Smith brought this petition for writ of prohibition.

Briefly, the facts are that Smith operated the Madera Ambulance Service during the period October 1967 to September 1968. From March 1966 to July 1968 he employed Betty Marie Smith, his sister-in-law, as his bookkeeper. She prepared claims for Medi-Cal or Medicare for ambulance services rendered, which claims were based upon information supplied by Smith. The claims which are the basis for the charging accounts of the information were signed by either Smith or her, and presented to California Blue Shield for payment by the State of California under the state financial Medicare program. Blue Shield, the fiscal intermediary for the state program, kept the records of services and eligibility. Upon approval of a claim, Blue Shield stored it in a "computer bank," but prior to printing checks in payment of claims approved by Blue Shield, the claims had to be certified

by a State of California certifying officer and the funds transferred from the Health Care Deposit Fund of the State of California to a segregated bank account in the Bank of California. Payment by Blue Shield check was made only after such certification by a state certifying officer. The segregated account in Bank of California, Blue Shield, was used solely for payment to providers under the state financial Medicare program.

■ Each count of the information represents a claim by Smith and paid by the state through the Blue Shield procedure. Petitioner contends he did not commit a public offense within the ambit of Penal Code section 72, which at the time the alleged offenses were committed, read: "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, town, city, district, ward or village board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is guilty of a felony."

The thrust of petitioner's argument is that he presented his claims to Blue Shield, not to a governmental agency, so that even though the state paid false claims as a result of his actions, technically there was no violation of section 72.

An interesting sidelight to the argument is that petitioner has filed with this court an unpublished opinion from another district, holding that where Blue Shield rejected false claims there was no violation of section 72. The reasoning upon which the unpublished opinion is based is that Blue Shield is a private contractor and as such does not constitute a public body or agency as defined in section 72. However, the facts as stated in the unpublished opinion are not apposite to those before us in that there the rejected claims were never presented to the state. The upshot of the case is that the defendant's failure to obtain approval of his claim prevented presentation to the state, which therefore precluded a violation of section 72.

Here, the claims were approved, they were presented to a state officer and, by reason of his approval of them, the claims were paid to petitioner.

Both sides argue whether Blue Shield was the state's agent or petitioner's agent in presenting the false claims to the state. We do not see that it makes any difference since the gravamen of the offense lies in petitioner's ultimate objective that the claims be filed with the state and that he be paid by the state. Smith cannot absolve himself of his guilt in using Blue Shield as a conduit to siphon off state funds through false claims that require state approval before payment.

In short, when petitioner filed the false claims he knew that they had to be presented to a state agency for approval, and that the claims, if approved, would be paid from state funds. Thus he intended that the claims be forwarded to the state agency, and when that event occurred he violated section 72. It matters not whether he presented the claims directly to the state or indirectly through Blue Shield; there was no way he could succeed in getting the money without violating the section.

We turn to Smith's claim of former jeopardy as to counts 2 through 11. Those counts were included in counts 2 through 22 of the original information upon which petitioner went to trial. As noted, the court, sitting without a jury, found petitioner guilty of count 1 and thereafter, upon motion of the district attorney, dismissed the remaining counts in the interests of justice. At first blush it would appear clear that jeopardy attached where the dismissal was made at the conclusion of the trial. ■ However, the essence of the Fifth Amendment proscription against a person being placed twice in jeopardy for the same offense is that he must have been placed on trial for the *same charge* which is the basis for his claim of former jeopardy. Cases articulating the term "placed on trial" speak in terms of the trial being "entered upon." (See 1 Witkin, Cal. Crimes (1963) p. 175 et seq.) ■ Applying this test to charges 2 through 11, we find that at the very outset of the trial the court said: "Gentlemen, it is the court's understanding that this matter will be submitted on the transcript of the preliminary hearing and supplemenal evidence that either party may wish to introduce upon count 1 and count 12." Defense counsel responded: "Yes, your Honor, that's right."

Thus it is clear that before the trial was "entered upon" the trial court narrowed the trial to counts 1 and 12. It is for this reason the court was not concerned about the question of former jeopardy in delaying dismissal of counts 2 through 11 until the conclusion of the trial. That is to say, since petitioner was not on trial for any counts other than 1 and 12, he was not put in jeopardy as to counts 2 through 11 whether dismissal occurred before trial, during trial, or at the conclusion of trial.

■ Petitioner argues that the court granted a new trial as to count 1, upon which he had been found guilty, for the reason that evidence of the other counts was considered by the court in determining guilt as to count 1. If that be the reason for granting the new trial, it is immaterial insofar as the question of former jeopardy is concerned since jeopardy does not rest upon whether the court had before it evidence of other counts or crimes or relied upon evidence of the other counts or crimes; rather, the test is whether petitioner was being tried for such other crimes. The court announced at the outset of trial that the defendant in the case was on trial only as to counts 1 and 12, and to this counsel agreed.

The order to show cause is dismissed; the stay order is vacated, and the petition for writ of prohibition is denied.

Gargano, J., and Coakley, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied May 6, 1970.