Bass, Respondent, vs. Nofsinger, Appellant.

*September 15—October 13, 1936.*

*Harry T. Jordan* of Hillsboro, for the appellant.
*Henry C. Rowan* of Elroy, for the respondent.

MARTIN, J. The evidence in this case as to the controlling facts is not in dispute. Mr. Markee, the farmer who owned the sheep in question, testified:

"The day before this dog was shot I chased that white dog down the road. That night I heard a dog barking, being a cripple, I didn't get up. The next day he came again. Roy's boy said, 'That dog is out there after the sheep.' We all run out. The dog chased the sheep down by the straw pile and the dog came back and the rest of the sheep went around the barn and as they came through between the hog house and barn the dog was close behind the sheep and when they came up through about half way between the barn and the granary the defendant fired at the dog. The dog ran, laid down and then went across the field. The dog was cer-

tainly worrying the sheep. I didn't know whose dog it was. . . . The dog chased the sheep about three hundred feet. The dog chased the sheep until shot."

The defendant-appellant testified:

"On February 10, 1934, I was at the Jim Markee farm. At about three o'clock in the afternoon I was getting ready to go home and the boy stepped up and looked out the window. Had seen the dog before running in the field. It was a white dog. The boy said, 'There's that darn dog again.' Jim said, 'Shoot him,' and I got the gun and shells and went out the north door. The dog went then north of the barn with the sheep. Some went right on ahead of him and I intended to go through the barn and catch him as he went toward the machine shed but as I got out half way to the barn, I saw the sheep coming up between the hog shed and the barn and I knew the dog was following close. I stopped half way and as the sheep came through between the hog house and the granary the dog was close behind them and I let him have it. . . . He had the sheep on the run. He was worrying the sheep."

The foregoing testimony is corroborated by that of two other witnesses who testified that they saw the dog chasing the sheep at the time in question; that the sheep were running, and the dog was running after them. This testimony on the part of the defense is not denied or contradicted by any testimony offered on behalf of the plaintiff-respondent.

The circuit court apparently was of the opinion "that the trial court [justice court] should not be reversed on a question of fact unless there appears a clear case of abuse of the trial court's discretion." There is no such presumption as to the finding or judgment of the justice court. Sec. 306.18, Stats. 1933, provides:

"Upon the hearing of the appeal, when there is no new trial, the appellate court shall give judgment according to the weight of the evidence and the justice of the case, without regard to technical errors which do not affect the merits and without regard to the findings of the justice, and may, if necessary, amend the pleadings therein, render an affirmative

judgment or affirm or reverse the judgment in whole or in part, either as to damages or costs, or both, as to any or all of the parties, and for errors of law or fact."

Defendant-appellant contends that he had a legal right, by virtue of sec. 174.01, Stats. 1933, to kill respondent's dog. That section, so far as material, provides:

"*Dogs may be killed.* Any person may kill any dog, . . . found killing, wounding or worrying any horses, cattle, sheep, lambs or other domestic animals."

"Worry," as used in statutes providing that anyone finding a dog, not on the premises of its owner, worrying, wounding, or killing any sheep, may kill the dog, means, "to run after; to chase; to bark at." 8 Words and Phrases (First Series), p. 7526; *Marshall v. Blackshire,* 44 Iowa, 475, 477.

Sec. 174.10, Stats. 1933, last sentence of sub. (1), provides:

"Any person may kill a dog, whether licensed or unlicensed, if found killing or worrying any domestic animal."

The respondent contends that the evidence does not sustain the claim that the dog was worrying the sheep when shot by appellant. There is no merit in this contention. The uncontradicted testimony shows that the dog was chasing after the sheep, had them on the run, and had been chasing them for a distance of about three hundred feet before appellant fired. Clearly, this conduct on the part of the dog constituted a worrying of the sheep in question within the plain intent of the statutes above quoted. Independent of the foregoing statutes which we hold applicable to the facts in this case and necessitate a reversal of the judgment, the rule in this state is that "one may protect his animate property from the vicious attacks of other animals, and, if there exists an impending necessity therefor, may kill the attacking animal to save his own from death or serious harm and this principle extends to cases where the circum-

stances are such as to impress a reasonable man of an existing necessity to act and the actor honestly believes that such necessity exists." *Skog v. King,* 214 Wis. 591, 593, 254 N. W. 354.

The appellant further contends that because respondent's dog was unlicensed at the time in question no action can be maintained by the respondent owner under the provisions of sec. 174.10, Stats. 1933. This contention is sound. Sec. 174.05 (1), Stats. 1933, provides:

"Every owner of a dog more than six months of age on January first of any year . . . shall annually, before the first day of February, obtain a license therefor, and shall pay for such license one dollar for each male dog, and spayed female dog, and two dollars for each female dog. . . ."

Sub. (2) provides:

"The license year shall commence on the first day of January and end on the thirty-first day of the following December. . . ."

By reason of his age, respondent's dog was required to be licensed. Sec. 174.10, Stats. 1933, so far as material, provides:

"(1) Any person may seize, impound or restrain any unlicensed dog which he may find running at large. The fact that a dog is without a license attached to a collar shall be presumptive evidence that the dog is unlicensed. *No action shall be maintained* for an injury to or the destruction of a dog without a tag, unless it shall appear affirmatively that the dog is duly licensed and that a tag had been properly attached to the collar of the dog and had been lost or removed without the knowledge or consent of the owner, or that the dog is not required to be licensed. . . ."

This dog was unlicensed at the time it was shot. No action can be maintained.

*By the Court.*—Judgment reversed. Record remanded, with directions to dismiss the action with costs.