745 A.2d 598

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOSEPH SPANO, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 20, 2000—Decided February 24, 2000.

288

Before Judges PAUL G. LEVY, CARCHMAN and LEFELT.

*Stanley, Powers & Matyola,* attorneys for appellant (*Frank J. Stanley, III,* of counsel; *Daniel J. Matyola,* on the brief).

*Stephen B. Rubin,* Hunterdon County Prosecutor, attorney for respondent (*Marcia A. Crowe,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

CARCHMAN, J.A.D.

While deer hunting during the early evening of January 28, 1998, defendant Joseph Spano shot and killed two dogs—a golden retriever mix and an Australian shepherd mix. The two dogs were observed by defendant as they were standing over a deer carcass approximately 118 feet away. Defendant asserted that the shepherd aggressively began running toward him and in an act of self-defense, he shot the dog, apparently wounding him. He then looked in the direction of the retriever and observed the dog growling; whereupon, he shot that dog as well. After defendant reloaded his weapon, he heard the shepherd whimpering, and possibly suffering, so he proceeded to fire a second shot at that dog killing it. Defendant claimed that he did not know the dogs were pets but thought they were coyotes or wild dogs. He further claimed that he felt that his life and safety were in jeopardy.

After receiving a call from the caretaker of the hunting property and initially denying any knowledge of the dead dogs, defendant contacted the Branchburg Police Department where he voluntarily

gave a statement setting forth his version of the facts. Thereafter, defendant was charged with six separate offenses: two counts of the disorderly persons offense of needlessly killing an animal, *N.J.S.A.* 4:22–17(a); two counts of injury to property while hunting, *N.J.S.A.* 23:7–3; and two counts of the penalty offense of needlessly killing an animal, *N.J.S.A.* 4:22–26(a). He was convicted of all offenses in the Union Township Municipal Court, and after a trial *de novo* was again convicted in the Superior Court, Law Division. As to the disorderly persons offenses, *N.J.S.A.* 4:22–17(a), defendant was sentenced on each count to a fine of $500, a fifteen day suspended county jail sentence and thirty days of community service together with court costs. Under the penalty provisions of *N.J.S.A.* 4:22–26(a), defendant was sentenced on each count to a civil penalty of $250 together with court costs. Finally, under the penalty provisions of *N.J.S.A.* 23:7–3, defendant was sentenced on each count to a penalty of $1,000, court costs and a revocation of his hunting license for a period of five years. Defendant appeals, and we affirm.

On appeal, defendant raises the following issues:

POINT I THE LAW DIVISION ERRED UPON [sic] THE CREDIBILITY DETERMINATIONS OF THE MUNICIPAL COURT JUDGE, AND THIS COURT SHOULD THEREFORE MAKE INDEPENDENT FINDINGS OF FACT.

POINT II FACTUAL FINDINGS BELOW ON THE SEQUENCE AND MANNER OF THE SHOOTINGS WERE ERRONEOUS AND CLEARLY AGAINST THE EVIDENCE, AND MUST BE SET ASIDE.

POINT III THE LOWER COURTS APPLIED THE WRONG STANDARD IN DETERMINING WHETHER DEFENDANT'S CONDUCT FELL WITHIN THE STATUTORY PROVISIONS.

POINT IV THE VERDICTS WERE AGAINST THE WEIGHT OF THE EVIDENCE.

POINT V THE MUNICIPAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO ADMIT DEFENDANT'S PROFFER OF EXPERT TESTIMONY ON "WORRYING."

POINT VI THE SENTENCES IMPOSED WERE EXCESSIVE.

We have carefully reviewed the record and conclude that defendant's arguments are without merit. We note that Points I, II, and IV all address the judge's consideration of the evidence,

credibility findings and weight of the evidence. Our review of such issues is limited to determining if the findings of fact " 'could reasonably have been reached on sufficient credible evidence present in the record.' " *State v. Locurto,* 157 *N.J.* 463, 471, 724 *A.*2d 234 (1999) (quoting *State v. Johnson,* 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964)). We find that this standard was met in this case, and the record supports the findings. We offer some additional comments regarding Points III, V and VI.

▮ Defendant urges that he was justified in killing the dogs not merely if he did so in self-defense but also "if he had a reasonable belief that they were chasing, worrying, wounding, destroying, chasing after, or even barking at his person or his property," relying on the Supreme Court's decision in *Bunn v. Shaw,* 3 *N.J.* 195, 69 *A.*2d 576 (1949). Defendant claims that *Bunn* supports his justification defense based on the dog's barking. Defendant's reading of both the statute, *N.J.S.A.* 4:19–9,[1] and *Bunn* are too expansive. There must be more than a dog's barking to justify the killing; but more importantly, both the Municipal Court judge and the Superior Court judge properly assessed whether the "threat" to defendant and defendant's reaction thereto were reasonable under the described circumstances. Both found defendant's conduct to be excessive, and our review of the record does not warrant a contrary result.

▮ The term "worrying" was defined in *Bunn* as follows:

"Worry" as used in statutes providing that one may destroy a dog worrying sheep means "to run after; to chase; to bark at." Such is the meaning given to the word by courts of cattle raising states such as Colorado and Wisconsin. *In re: Failing v. People,* [105 *Colo.* 399,] 98 *P.*2d 865 (Colo.); *Bass v. Nofsinger,* [222 *Wis.*

---

1 *N.J.S.A.* 4:19–9 provides:

A person may humanely destroy a dog in self defense, or which is found chasing, worrying, wounding or destroying any sheep, lamb, poultry or domestic animal.

480,] 269 *N.W.* 303 (Wis.); both cases citing 8 *Words and Phrases, 1st Series,* p. 7526; 45 *Words and Phrases (Perm.Ed.)* p. 541.

[*Bunn, supra,* 3 *N.J.* at 198, 69 *A.*2d 576.]

The Court concluded:

> We hold the law to be that a landowner has no right to kill a dog which is merely trespassing but he may humanely destroy a dog under circumstances giving rise to a reasonable belief that the dog is chasing, worrying, wounding or destroying stock or domestic animals, his person, his property, or that of other persons.

[*Id.* at 200, 69 *A.*2d 576.]

We recognize that to the extent *Bunn* includes the definition of "worrying" within the scope of conduct permitting the destruction of a dog "worrying" one's person, then such conduct must rise to the level that involves *defense* of one's person. To construe the statute as broadly as that suggested by defendant would equate, for example, the impact of a barking dog on farm stock with the impact of the same barking on a human being. We conclude that neither the Legislature in its enactment of the statute nor the Supreme Court in *Bunn* intended such a result.

 Closely related to this issue is the Municipal Court judge's refusal to allow defendant's expert, Dr. Beebe, to testify as to her definition of the term "worrying" as it is used in the statute. We find no error in the judge's refusal to allow Dr. Beebe to testify as to whether the dogs' conduct amounted to "worrying." Neither the word nor its definition is so obscure or ambiguous as to require the assistance of an expert for clarification or definition. "Worrying" is more than simply barking. "Worrying" is defined as "harass[ing] by tearing, biting, or snapping, especially at the throat"; "assail[ing] with rough or aggressive attack or treatment"; or "seizing an animal with the teeth and shaking it so as to kill or injure it." *Webster's Third New International Dictionary* 2636–37 (1981). The term is recognized in common legislative usage as a standard in animal control and protection statutes in other jurisdictions. *See, e.g., Cal. Civ.Code* § 3341 (West 2000); *Cal.Penal Code* § 597b (West 2000); *Colo.Rev.Stat. Ann.* § 35–43–126 (West 1999); *Conn. Gen.Stat. Ann.* § 22–358 (West 1999); *Me.Rev.Stat. Ann.* tit. 12, § 7501 (West 1999); *N.D. Cent.Code* § 36–21–10 (1999); *People v. Superior Court,* 201 *Cal.App.*3d 1061, 247 *Cal.Rptr.* 647, 648, 652 (1988), *cert. denied,* 488 *U.S.*

1030, 109 *S.Ct.* 838, 102 *L.Ed.*2d 970 (1989); *Shirley v. State*, 254 *Ga.* 723, 334 *S.E.*2d 154, 155 (1985); *Holden v. Schwer*, 242 *Neb.* 389, 495 *N.W.*2d 269, 271 (1993); *Trautman v. Day*, 273 *N.W.*2d 712, 713–15 (N.D.1979); *Munyon v. Moe*, 46 *Wis.*2d 629, 176 *N.W.*2d 324, 326–28 (1970). We find no abuse of the judge's discretion in his refusal to admit Dr. Beebe's proffer as to "worrying," as there was no need for her definition or description of such conduct. That issue was for the trial judge and was correctly determined.

■ Finally, we disagree with defendant that the killings were a single offense for which one license suspension was sufficient. Two separate pets were slain belonging to two separate owners. These were different offenses, and two suspensions were appropriately imposed.

Affirmed.