**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4560-19

JOHN TIMMINS, individually
and in the name of the Passaic
County SPCA,

      Plaintiff-Appellant,

v.

ROBERT B. BOYLE, BRIAN
GUNDERSON, O. RIVIERO,
C. AGUIRRE-CRUZ, SAMUEL
RIVERA, M. FIGUEROA,
ISABELINO PELLOT, JR.,
CITY OF PASSAIC, and
CITY OF CLIFTON,

      Defendants-Respondents.

_____

Submitted April 28, 2021 – Decided June 3, 2021

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1092-18.

Isabelle Strauss, attorney for appellant.

Vaughan Baio & Partners, attorneys for respondents City of Passaic, Brian Gunderson, O. Riviero, C. Aguirre-Cruz, Samuel Rivera, M. Figueroa, and Isabelino Pellot, Jr. (Peter P. Perla, Jr., of counsel and on the brief; Joseph P. Horan, II, on the brief).

PER CURIAM

Plaintiff John Timmins, individually and in the name of the Passaic County SPCA,[1] brought this action seeking relief under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2, and N.J.S.A. 4:22-26(a)(1), for the fatal police shooting of his American bulldog. He appeals from June 19, 2020 Law Division orders that: (1) granted summary judgment to defendants City of Passaic, Brian Gunderson, O. Riviero, C. Aguirre-Cruz, Samuel Rivera, Jr., M. Figueroa, and Isabelino Pellot, Jr. (collectively, the Passaic defendants); and (2) denied summary judgment to plaintiff. We affirm in part, reverse in part, and remand for trial.

The motion record, viewed in the light most favorable to plaintiff as the non-moving party, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 540 (1995), reveals the following facts. On September 23, 2017, plaintiff's medium-sized, four-year-old female American Bulldog, Wildfire, escaped from plaintiff's yard and roamed the City of Passaic. Wildfire did not have a collar

---

[1] The Passaic County SPCA did not participate at the trial level or in this appeal.

or any other identification. Plaintiff went outside to look for Wildfire when he realized Wildfire left and was worried because she had slight vision and hearing problems.

At approximately 8:50 a.m., City of Passaic police were dispatched following 911 reports of a dog chasing other animals and people in Passaic. Transmissions from multiple 911 callers and dispatchers described a Pitbull attacking another dog and looking "vicious" and "very aggressive."

Upon arrival at the scene, Officer Samuel Rivera of the Passaic Police Department asked the woman who made the 911 call if Wildfire was aggressive. The woman answered, "No[,] not to people. She seemed fine." The woman advised Rivera, however, that Wildfire attacked several small dogs. She indicated Wildfire stopped attacking other dogs when a bystander clapped and yelled at Wildfire. She also indicated that Wildfire may have killed or seriously injured one of the dogs.

While speaking to the woman, Rivera observed Wildfire chase and attack a cat. When Rivera activated his siren, Wildfire released the cat, which was able to run away. At this point, Rivera contacted Passaic Sergeant Figueroa for permission to shoot Wildfire. Figueroa denied permission.

 A-4560-19

Rivera subsequently requested that animal control respond. While waiting and with Wildfire in his view, Rivera opened the driver's side rear door of his patrol vehicle to lure Wildfire inside. After a few unsuccessful attempts, Wildfire walked away, leaving Rivera's view.

Soon thereafter, Passaic Police Officers Riviero and Aguirre-Cruz arrived on the scene to assist Rivera find Wildfire. Clifton Animal Control Officer (ACO) Robert Boyle also arrived. While looking for Wildfire, Rivera and Boyle passed two men who pointed in the direction of Wildfire. The officers asked the men whether Wildfire had tried to bite them; they responded in the negative while laughing. Rivera and Boyle subsequently found Wildfire and attempted to capture her with the use of Boyle's snare pole. With the snare pole pointed towards her, Wildfire allegedly assumed "an aggressive stance, then walked away slowly into the field area next to the parking lot."

At this time, Boyle stated he "believe[d] the best option would be to neutralize the animal before it attack[ed] again." Boyle, however, did not have a tranquilizer gun available. At approximately 9:30 a.m., Passaic ACO Brian Gunderson, who was also at the scene, agreed with Boyle. Aguirre-Cruz contacted Figueroa, who gave clearance to neutralize Wildfire when there was an opportunity to take a safe shot.

4

At approximately 9:46 a.m., Rivera found Wildfire in a wooded area, laying down in front of a small earthen berm. Once the area was clear, Rivera shot Wildfire behind the right shoulder, killing her instantly. Rivera and Boyle then canvassed the area to locate any victims or wounded animals. The canvas was conducted with negative results.

The Passaic County Prosecutor's Office investigated the incident, including reviewing Rivera's body camera video. It closed the investigation without filing any charges.

On April 3, 2018, plaintiff filed a five-count complaint alleging that: (1) the Passaic defendants: unconstitutionally "seized" his property, Wildfire, by shooting her in violation of the New Jersey Civil Right Act (NJCRA), N.J.S.A. 10:6-1 to -2 (count one); (2) the City of Clifton violated NJCRA by engaging in a practice, custom and policy of inadequate training, supervising, and retaining defendant ACO Robert Boyle; (3) "defendant City of Passaic engaged in a practice, custom and policy of inadequately training, supervising, and retaining its employees," "evinc[ing] a deliberate indifference to the rights of [p]laintiff" (count three); (4) "defendants individually and in concert destroyed evidence and engaged in a series of fabrications . . . to dissuade [plaintiff] from exercising his rights to pursue legal redress" (count four); and (5) defendants "caused and

procured the needless killing of a canine . . . thereby committing an act of cruelty in violation of N.J.S.A. 4:22-26(a)(1)" (count five). Plaintiff did not plead a cause of action under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3.

In lieu of filing an answer, the Passaic defendants moved under Rule 4:6-2(e) to dismiss the complaint for failure to state a claim upon which relief may be granted. Defendant City of Clifton and Robert B. Boyle (the Clifton defendants) joined in the motion. On January 9, 2019, the trial court denied the motion as to counts one through four but dismissed count five. The judge concluded that shooting a dog that posed no imminent threat to Rivera or others present was unreasonable under Article 1, paragraph 7 of the New Jersey Constitution.

The Passaic defendants moved for reconsideration, arguing they were protected from liability by the doctrine of qualified immunity. The court denied the motion because the parties had not yet engaged in discovery, which it deemed necessary to determine whether plaintiff's claims were viable.

On December 13, 2019, the Passaic defendants filed an answer and counterclaim. The parties then engaged in discovery.

During his deposition, plaintiff testified that he was employed as an ACO in Fair Lawn before a reorganization terminated his employment. He described

6

the following "common sense" protocol for capturing an aggressive dog. First, you try to leash the dog. If that does not work, you try a snare pole. If still unsuccessful, you can summon a veterinarian to give you a sedative to put in food. You could also set a dog trap if the dog was running in the woods. You could also summon additional ACOs to the scene.

Plaintiff reviewed the video of Rivera shooting Wildfire and stated he "would never be a part of that, and [he did not] know any ACO in [his] department that would do that." When asked whether Wildfire's attack on the cat should have prompted concerns about Wildfire's aggressive behavior, plaintiff responded that Wildlife's conduct did not "reach a bar that the dog should have been shot while [it was] laying down, absolutely not."

Plaintiff testified that when he went to the police station after the incident, officers lied to him about Wildfire attacking and almost killing a dog, which he found out was not true. The officers, including Rivera, requested a lawyer to be present during any conversations with plaintiff.

Plaintiff acknowledged it was his fault that Wildlife got out but stated that shooting Wildlife should have been the "last option." He noted that three people said they were not afraid of Wildlife. Plaintiff thought the officers probably

7

mistook Wildfire for a Pitbull and believed Wildlife would not have been shot if she were a different breed.

Plaintiff stated Wildfire was "very friendly" and that "[s]he never bit a person, she never came close." He acknowledged that Wildfire had two prior incidents with cats. Plaintiff asserted it was unclear whether Wildfire instigated the fights with either cat.

After discovery had ended, the Passaic defendants moved for summary judgment, arguing that when evaluating a claim of qualified immunity, it was plaintiff's burden to show that the law establishing plaintiff's rights was clearly established. They argued there is no New Jersey or United States Supreme Court case law setting the parameters for when a police officer can use force to subdue an unleashed dog that is running wild. The Passaic defendants contended that Brown v. Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001), was factually distinguishable and not binding precedent.

Plaintiff cross-moved for summary judgment. He argued that shooting a a dog constitutes an unreasonable seizure under the Fourth Amendment of the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution. Plaintiff contended that, "to be reasonable, the shooting of a dog must be predicated upon the dog . . . being an imminent threat to the officer" or

another person. He asserted that Wildlife did not pose an imminent threat to anyone during the incident and was not an imminent threat at the time of the killing because she was laying down.

On June 19, 2020, the trial court issued two orders and an oral decision granting summary judgment to the Passaic defendants, dismissing counts one, three and four of the complaint and denying summary judgment to plaintiff. The judge found no basis for either individual or municipal liability.

As to the individual defendants, the court found "the challenged conduct may arguably have violated a constitutional right, i.e., an unreasonable taking of [plaintiff's] property, but fails under the second prong" because, at the time of the killing, that right was not "clearly established."

The judge explained the facts were not similar to Muhlenberg, which involved the repeated shooting of a dog with a collar that had not been violent towards anybody or anything while the owner yelled from a close distance not to shoot the dog. In contrast, Wildfire did not have a collar or identification, it was unknown whether Wildfire was a stray or pet, and defendants made attempts at capturing Wildfire without lethal force. Further, defendants witnessed Wildfire's aggressive behavior towards other animals.

A-4560-19

The judge found "a reasonable officer would not have clearly understood his or her actions to be unlawful in such circumstances[,]" and that plaintiff had not cited any statute or case law that "made clear [d]efendants' conduct was unlawful." "This is not to say that [d]efendants definitively did the right thing in handling this situation or that they exhausted every feasible option before using lethal force, but only that a reasonable officer in such circumstances would have understood such actions to be lawful." The judge concluded that defendants' "actions do not rise to the level of 'plain incompetence' or 'knowingly violating the law as described in [Morillo v. Torres, 222 N.J. 104, 118 (2015)]. Their actions were not explicitly contrary to any statute or case law at the time of the occurrence."

The judge explained that a municipality is liable only "when 'the alleged constitutional transgression implements or executes a policy[,] regulation or decision officially adopted by the governing body or informally adopted by custom.'" (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)). "Further, there must be causation between the municipality's actions and the constitutional injury." The judge found plaintiff did not show there was any such policy or custom or that any of the police officers or ACOs "qualified as sufficient policy decision makers to attach liability."

The Clifton defendants also moved for summary judgment. The trial court granted the motion. Plaintiff does not appeal from the dismissal of count two of the complaint.

This appeal followed. Plaintiff limits his appeal to the dismissal of counts one, three and four of the complaint. He does not appeal from the earlier dismissal of count five.

Plaintiff raises the following points for our consideration:

POINT I

[THE] PASSAIC DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF QUALIFIED IMMUNITY: SHOOTING OF WILDFIRE WHILE SHE WAS LYING DOWN AND POSING NO IMMINENT DANGER CONSTITUTED AN UNREASONABLE SEIZURE UNDER THE ESTABLISHED LAW.

POINT II

SHOOTING OF A DOG CONSTITUTES AN ACTIONABLE SEIZURE UNDER THE UNITED STATES CONSTITUTION AND THE NEW JERSEY CONSTITUTION.

POINT III

[THE] LAW OF THE CASE DOCTRINE SHOULD APPLY.

A-4560-19

POINT IV

OFFICER'S USE OF DEADLY FORCE AGAINST A DOG IS AN UNREASONABLE SEIZURE UNLESS THE DOG POSES AN IMMEDIATE THREAT TO THE OFFICER'S SAFETY.

POINT V

THE FACTS PERTINENT TO THE ESTABLISHED STANDARD OF REASONABLENESS ARE NOT IN DISPUTE: THE UNCONTESTED FACTS ESTABLISH THAT AT THE TIME OFFICER RIVERA SHOT WILDFIRE SHE DID NOT PRESENT AN IMMEDIATE DANGER TO DEFENDANT RIVERA OR TO ANYONE PRESENT AT THE SCENE.

We review the ruling on a summary judgment motion de novo, applying the same standard governing the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)); accord R. 4:46-2(c). "An issue of material fact is 'genuine only if,

considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Id at 24 (quoting Bhagat, 217 N.J. at 38). We review issues of law de novo and accord no deference to the trial court's legal analysis and conclusions. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (quoting Templo Fuente, 224 N.J. at 199).

NJCRA was adopted "for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights and to fill any gaps in state statutory anti-discrimination protection." Owens v. Feigin, 194 N.J. 607, 611 (2008). It affords a private right of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law . . . .
>
> [N.J.S.A. 10:6-2(c).]

While the NJCRA does not explicitly contain or refer to any immunities, "it has long been interpreted as allowing the affirmative defense of qualified immunity." Ramos v. Flowers, 429 N.J. Super. 13, 21 (App. Div. 2012).

Qualified immunity "acknowledges an officer may make 'reasonable mistakes . . . as to the legal constraints on particular police conduct.'" Id. at 27 (quoting Saucier v. Katz, 533 U.S. 194, 205 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009)). "Thus, '[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.'" Ibid. (alteration in original) (quoting Saucier, 533 U.S. at 202).

To determine whether a police officer or ACO is shielded by qualified immunity, we apply a two-pronged analysis: (1) whether "the facts, '[t]aken in the light most favorable to the party asserting the injury[ ] . . . show the officer's conduct violated a constitutional right'; and (2) that constitutional 'right was clearly established' at the time" of the officer's conduct. Brown v. State, 230 N.J. 84, 98 (2017) (alterations in original) (quoting Saucier, 533 U.S. at 201).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Lapolla v. Cnty. of Union, 449 N.J. Super. 288, 304 (App. Div. 2017) (alteration in original) (quoting Gormley v. Wood-El, 218 N.J. 72, 133 (2014)). The officer's understanding that he is violating a clearly established right must be specific to the "context of the case, not as a broad

general proposition." Id. at 304-05 (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)). Thus, we "are required to review the 'case law existing at the time of the defendant's alleged improper conduct' and determine whether there was 'sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited.'" Id. at 305 (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3rd Cir. 2001)).

Importantly, "a robust 'consensus of cases of persuasive authority'" is sufficient to clearly establish a constitutional right in lieu of controlling authority. Ashcroft v. al-Kidd, 563 U.S. 731, 741-42 (2011) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)). See Maldonado, 568 F.3d at 271 (finding "[t]he killing of a person's dog . . . without the person's consent is also a seizure within the meaning of the Fourth Amendment" was clearly established despite never previously addressing the issue because of "widespread acceptance" among circuit courts).

Defendants argue there was no clearly established law in New Jersey that shooting Wildfire under the circumstances would violate plaintiff's rights. However, an action under the NJCRA is not limited to the rights guaranteed under the New Jersey Constitution. Owens, 194 N.J. at 611.

15

The Fourth Amendment of the United State Constitution and Article I, Paragraph 7 of the New Jersey Constitution each provide that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "Animals have traditionally been treated by the law as property." McDougall v. Lamm, 211 N.J. 203, 223 (2012). Pets are now recognized as "a special variety of personal property." Ibid. (citing Hyland v. Borras, 316 N.J. Super. 22, 25 (App. Div. 1998)). In addition to the animal's value, pet owners may recover the cost of medical treatment and damages based on the pet's intrinsic value. McDougall, 211 N.J. at 225.

Wildfire was fatally shot on September 23, 2017. Prior to that date, numerous federal circuits had "already concluded that, 'the use of deadly force against a household pet is reasonable only if the pet poses an [imminent] danger and the use of force is unavoidable.'" Brown v. Battle Creek Police Dep't, 844 F.3d 556, 566 (7th Cir. 2016) (alteration in original) (quoting Robinson v. Pezzat, 818 F.3d 1, 7 (D.C. Cir. 2016)). In turn, "[e]very circuit that has considered this issue has concluded that the unreasonable killing of a dog constitutes an unconstitutional 'seizure' of personal property under the Fourth

Amendment." Id. at 567. By 2016, seven federal circuits had recognized this Fourth Amendment right. See id. at 566 (collecting cases).

We conclude that at the time of the 2017 incident, dog owners had a clearly established right not to have their pet killed by police without sufficient cause under the Fourth Amendment. See id. at 567 (holding this Fourth Amendment right was clearly established in 2013). As an issue of first impression, we further hold that dog owners are afforded an identical right under Article 1, paragraph 7 of the New Jersey Constitution.

We next consider whether the killing of Wildfire was unreasonable and thereby violated plaintiff's constitutional rights. Plaintiff argues that upon arrival on the scene, Rivera was informed that the initial calls to dispatch were erroneous to the extent they indicated that people were being chased by a dog. Rivera himself witnessed that Wildfire was not aggressive towards people. In response, defendants argue Wildfire exhibited aggression towards a cat in Rivera's presence and ACO Boyle told Rivera that Wildfire was exhibiting aggressive behavior towards him during the use of his snare pole. (Db48). Defendants contend that N.J.S.A. 4:19-9, titled "Right to destroy offending dogs," allows a person to kill a dog "which is found chasing, worrying, wounding or destroying any . . . domestic animal."

17

"Ordinarily, application of the defense of qualified immunity is a legal question for the court rather than the jury . . . ." Brown, 230 N.J. at 98-99 (citing Schneider v. Simonini, 163 N.J. 336, 356 (2000)). However, "[a]n exception to that rule arises when the case involves disputed issues of fact." Id. at 99 (citing Schneider, 163 N.J. at 359). In such instances, "the case may be submitted to the jury to determine 'the who-what-when-where-why type of historical fact issues,' after which the trial judge may incorporate those findings in determining whether qualified immunity applies." Ibid. (quoting Schneider, 163 N.J. at 359). See also Baskin v. Martinez, 243 N.J. 112, 129, 134 (2020) (affirming remand to trial court in Fourth Amendment reasonable force case because "[b]ased on the facts that we must accept as true for purposes of determining the issue of qualified immunity on the summary judgment record, . . . the ultimate truth . . . is a matter for a jury to determine.").

Whether a dog is perceived as a threat under the statute is an issue of fact. State v. Spano, 328 N.J. Super. 287, 291 (App. Div. 2000). It requires assessing whether the "threat" posed by the dog and "defendant's reaction thereto were reasonable under the described circumstances." Ibid. If the officer's conduct is "excessive," liability may attach. Ibid. Whether Rivera acted reasonably by killing Wildfire requires a fact-sensitive analysis. The determination of those

disputed material facts, which hinges upon the credibility of the witnesses and defendants, is for the jury to decide. Indeed, the judge recognized that Rivera "may arguably have violated a constitutional right, i.e., an unreasonable taking of [plaintiff's] property . . . ."

Viewing the facts in the light most favorable to plaintiff, Ramos, 429 N.J. Super. at 27-28 (quoting Saucier, 533 U.S. at 201), the record contains considerable evidence that suggests Wildfire was not acting aggressively, much less posing an imminent threat, towards neighborhood residents, police officers, or ACOs on the scene. While looking for Wildfire, Rivera and Boyle asked two men who saw Wildfire if she tried to bite them, to which the men responded in the negative while laughing. Likewise, when Rivera asked the woman who made the 911 call if Wildfire was "aggressive," she replied: "No[,] not to people. She seemed fine."

Further, Rivera and Boyle chased Wildfire around for close to an hour while clapping and using snare poles and police sirens in an attempt to capture her. During this extended period, Wildfire did not lunge at, growl at, attempt to bite, or otherwise exhibit overly aggressive behavior at anybody, including the police officers and ACOs. When Boyle attempted to capture Wildfire using a snare pole, Wildfire briefly exhibited an aggressive stance, "then walked away

19

slowly . . . ." Undoubtedly, a vicious or dangerous dog would visibly react to the measures used by Rivera and Boyle—under the circumstances, Wildfire may even have reacted well. Finally, at the time of the killing, Wildfire posed no threat of imminent danger, as she was laying down in a secluded wooded area, distant from any other people or pets.

Whether the individual Passaic defendants were justified in recommending, approving, or carrying out the fatal shooting of Wildfire is a fact-sensitive issue. We are satisfied that genuine issues of material fact remain in dispute as to whether Wildfire posed an imminent threat of danger and, in turn, whether Rivera violated plaintiff's constitutional right against the unreasonable seizure of Wildfire. Consequently, the individual Passaic defendants have not demonstrated that they are entitled to judgment as a matter of law. We reverse the grant of summary judgment entered in favor of the individual Passaic defendants.

We next address the dismissal of the plaintiff's claims against the City of Passaic. "[NJCRA] was modeled after 42 U.S.C. § 1983," and federal courts "interpret NJCRA analogously to [Section] 1983." Trafton v. City of Woodbury, 799 F.Supp. 2d 417, 443 (D.N.J. 2011). "When a suit against a municipality is based on [Section] 1983, the municipality can only be liable when the alleged

constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." Beck, 89 F.3d at 971 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). "Although not authorized by written law," the practices of state officials are considered a "custom" when such practices are "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 690. "Custom requires proof of knowledge and acquiescence by the decisionmaker." McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009) (citing Watson v. Abington Twp., 478 F.3d 144, 154 (3d Cir.2007); Beck, 89 F.3d at 971).

With regard to Section 1983, a municipality "is not liable under the doctrine of respondeat superior for the misconduct of its police." Beck, 89 F.3d at 971 (citing Andrews, 895 F.2d at 1480). Plaintiff must demonstrate causation between the municipal policy or custom and the constitutional injury. City of Canton v. Harris, 489 U.S. 378, 391 (1989). These principles apply with equal force to claims under NJCRA.

The record fully supports the judge's findings that plaintiff did not show that any of the individual defendants were policymakers or that any municipal policy or custom caused his constitutional injury. On the contrary, the unsubstantiated claims against the City of Passaic were not supported by any proffered evidence and were properly dismissed.

Lastly, we address the denial of plaintiff's cross-motion for summary judgment. The material facts in dispute that precluded summary judgment in favor of the individual Passaic defendants likewise precluded summary judgment in favor of plaintiff. Plaintiff's cross-motion was properly denied.

Affirmed in part, reversed in part, and remanded for trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22